**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DIANE L. MOORE,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-04-CA-1120 NN** |
| **AIG VALIC,** | § | |
| | § | |
| **Defendant.** | § | |

### ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY 25)

#### I.  Introduction

The matter before the Court is defendant's motion for summary judgment (Docket Entry 25).  Defendant filed its motion for summary judgment on May 19, 2006.[1]  On June 9, 2006, plaintiff filed a response in opposition to summary judgment.[2]  Defendant filed a reply on July 13, 2006.[3]  After considering defendant's motion for summary judgment, plaintiff's response, defendant's reply, and the entirety of the record in this matter, defendant's motion for summary judgment will be **GRANTED**, in part, and **DENIED**, in part.

I have jurisdiction to enter this Order pursuant to 28 U.S.C. § 636(c).  The parties have consented to proceed before a magistrate judge for all matters in this case, including trial and entry of judgment.[4]  After the parties consented, the case was assigned to me on September 6,

---

[1] Docket Entry 25.

[2] Docket Entry 29.

[3] Docket Entry 33.

[4] Docket Entries 14 and 16.

2005.[5]

## II. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the statute conferring federal question jurisdiction, and 42 U.S.C. § 2000e-5(f)(3) of Title VII of the Civil Rights Act of 1964 ("Title VII").

## III. Issues Presented

Has plaintiff demonstrated genuine issues of material fact for trial that defendant discriminated against plaintiff because of her gender in violation of Title VII?

Has plaintiff demonstrated genuine issues of material fact for trial that defendant retaliated against plaintiff in violation of Title VII because she engaged in protected activity?

## IV. Undisputed Facts

Plaintiff Diane Moore is a female resident of the state of Texas and a former employee of defendant.[6]  Defendant AIG VALIC[7] is a life insurance company engaged in the business of providing life insurance products, financial planning, and investment services.  Defendant has its headquarters in Houston, Texas.[8]

---

[5] Docket Entry 17.

[6] Docket Entry 4 at ¶¶ 3, 7.

[7] Defendant states that it is incorrectly shown as AIG VALIC in plaintiff's complaint and is properly identified as The Variable Annuity Life Insurance Co.  Docket Entry 6 at 1.

[8] Docket Entry 26, Exh. 1 at ¶ 1.

Plaintiff began working for defendant in September 1994 as a sales representative.[9] Initially, she did not have a specific territory, but developed county government and new group prospects in counties surrounding the Houston metropolitan area.[10]  In 1999, defendant promoted plaintiff to the position of District Manager of the San Antonio Division in the Southwest Region.[11]  Joe Osborne ("Osborne"), Regional Vice President of the Gulf Coast Region, was her manager, while Ernest Jordan ("Jordan"), Regional Director of Sales, was her immediate supervisor.[12]

In October 2001, plaintiff filed an internal sexual harassment complaint against Jordan.[13] At the direction of defendant's in-house legal counsel, the Human Resources Director, Steven J. Mueller ("Mueller"), conducted an investigation of plaintiff's complaint.  Mueller interviewed Jordan, plaintiff, and several witnesses.[14]  At least two female employees provided information that they felt that women were treated differently than men.[15]  Mueller concluded that Jordan did not violate any of defendant's rules and informed plaintiff of the results of his investigation.[16]

---

[9] Docket Entry 26, Exh. 1 at ¶ 5.

[10] Docket Entry 26, Exh. 2 at 27.

[11] Docket Entry 26, Exh. 1 at ¶ 5, Exh. 2 at 30.

[12] Docket Entry 26, Exh. 1 at ¶ 5.

[13] In her amended complaint, plaintiff stated that she filed the internal sex discrimination complaint in November 2001.  Docket Entry 4 at ¶ 9.  While defendant admitted that plaintiff filed the internal complaint, defendant disputed the date.  Docket Entry  6 at ¶ 9.  Defendant asserts the proper date to be October 2001.  Docket Entry 26 at ¶ 5, Exh. 1 at ¶ 6.  Because defendant had access to plaintiff's employment records, I will accept October 2001 as the operative date for internal complaint.

[14] Docket Entry 26, Exh. 1 at ¶ 6.

[15] Docket Entry 29, Exh. 8.

[16] Docket Entry 26, Exh. 1 at ¶ 7.

Plaintiff admitted that Mueller handled the investigation properly, and Jordan did not bother her after the investigation.[17]

In December 2001, Jordan transferred to Atlanta, Georgia, and was no longer plaintiff's supervisor.[18]  During the same time, Osborne was reassigned as Vice President of Group Relationships.  Edward Boero ("Boero") became the Regional Vice President over plaintiff, and Kenneth Coffey ("Coffey") became the Regional Director of Sales with responsibility for supervising plaintiff.[19]

In March 2002, Boero decided to consolidate two Arizona districts into one larger district.[20]  Boero did not feel that either of the district managers, Mr. Burner ("Burner") and Mr. Petrytus ("Petrytus"), were qualified to manage the new district.  He submitted a memorandum to defendant's Termination Review Committee ("TRC") explaining his reasons for the consolidation.  In the memorandum, Boero requested that the TRC approve the consolidation plan and terminate the employment of both district managers if they were not selected for alternate positions.[21]

Before interviewing candidates for the position of district manager of the consolidated district, Boero advised Burner not to apply for the district manager position and offered him an alternate position as a branch manager, which Burner declined.  Boero also informed Petrytus

---

[17] Docket Entry 26, Exh. 2 at 45, 49.

[18] Docket Entry 26, Exh. 1 at ¶ 9, Exh. 2 at 49.

[19] Docket Entry 26, Exh. 1 at 10.

[20] Boero was Regional Vice President for the Southwest Region prior to the merger of the Southwest Region and the Gulf Coast Region in December 2001.  The Southwest Region included Southern California, Arizona, and New Mexico.  Docket Entry 26, Exh. 3 at ¶ 2.

[21] Docket Entry 26, Exh. 3 at ¶ 6.

that his leadership and communication skills were deficient, but offered him an opportunity to interview for the district manager position and address Boero's concerns. Petrytus interviewed for the position and convinced the interview panel to select him for the district manager position of the consolidated district.[22]

In the latter half of 2002, the district manager for the Central Texas District (Austin) transferred to a similar position in another region within the company. The transfer left six district managers in the seven districts of the Southwest Region. Boero decided to consolidate the seven Texas districts into six districts,[23] much as he did with Arizona districts. While several of the Texas districts were affected by the consolidation, the San Antonio and Central Texas Districts were impacted the most because the two districts were merged into the new South Texas District. Boero decided to locate the district manager in Austin to be closer to lawmakers and the University of Texas, a key client group.[24]

In November 2002, Boero contacted Mueller about his plan to restructure the Texas districts and eliminate one district entirely by combining the San Antonio and Central Texas Districts. Boero recommended that plaintiff's position be eliminated and that she not be offered the district manager position in the new South Texas District. No other district manager positions were eliminated.[25]

Defendant states that when a decision is made to eliminate or consolidate one or more

---

[22] Docket Entry 26, Exh. 3 at ¶¶ 7-8.

[23] Docket Entry 26, Exh. 3 at ¶ 9.

[24] Docket Entry 26, Exh. 3 at ¶¶ 10, 11.

[25] Docket Entry 26, Exh. 1 at ¶ 11.

positions, its procedure is to require the responsible manager/director to submit a memorandum setting forth the basis for the decision. The memorandum is reviewed by the Human Resources Department and in-house labor and employment counsel. The memorandum is then submitted to the TRC. The TRC must approve all employee terminations and severance packages. After the TRC approves the termination request and severance package, the manager/director informs the employee of the elimination/consolidation, describes any authorized severance, and (if appropriate) offers an alternate position.[26] Defendant followed this procedure when consolidating the districts of the two male managers in Arizona, but did not follow the procedure when consolidating plaintiff's district in Texas.[27]

While Boero sent a draft of a letter destined for the TRC to Mueller on November 26, 2002, giving his reasons for the consolidation, expressing his concerns about plaintiff's abilities, and advising Mueller that he did not plan to permit plaintiff to interview for the district manager position in the new South Texas District, Boero subsequently decided to allow plaintiff to interview for the position. The letter was not forwarded to the TRC.[28]

On December 2, 2002, Boero and Coffey contacted plaintiff and informed her of the consolidation plan. Boero informed plaintiff that he was not inclined to offer her the South Texas District Manager position and related his concerns regarding her performance. Plaintiff asked if they would interview her for the position and look at her fairly through the interview

---

[26] Docket Entry 26, Exh. 1 at ¶¶ 12, 13, 15.

[27] Docket Entry 26, Exh. 1 at ¶ 16.

[28] **Id.**

process.[29]  Boero agreed to be fair throughout the interview process, but Boero admitted that he had "personal issues" with plaintiff.[30]  Later in the afternoon, plaintiff informed Boero and Coffey that she would like to interview for the South Texas District Manager.  Boero informed her that she would have to address his concerns with her performance and suggested she contact Petrytus.[31]

On December 10, 2002, Mueller approved the release of a bulletin announcing the district manager opening for the new South Texas District and summarizing the duties of the position. Defendant opened the position to internal and external candidates.[32]  Ultimately, plaintiff and five other candidates interviewed for the district manager position.  Along with plaintiff the internal candidates included Di Gazdar ("Gazdar"), female, Richard Littrell ("Littrell"), male, Bob Kristek ("Kristek"), male, Gary Boehmer ("Boehmer"), male, and Troy Dryer ("Dryer"), male. Dryer was the only external candidate.[33]  Of the candidates, only plaintiff and Kristek held the position of district manager with defendant, while Boehmer, Littrell, and Gazdar held the lower position of financial advisor.[34]

On December 19, 2002, plaintiff submitted a discrimination complaint to Mueller claiming that the South Texas consolidation plan was a "thinly veiled attempt" to terminate her

---

[29] Docket Entry 26, Exh. 3 at ¶ 15, Exh. 2 at 61-62.

[30] Docket Entry 26, Exh. 2 at 62, Exh. 3 at ¶15.

[31] Docket Entry 26, Exh. 3 at 17.  In her EEOC affidavit, plaintiff states that when she informed Boero that she had already obtained a copy of Petrytus' presentation, Boero expressed shock at her initiative.  Docket Entry 29, Exh. 4 at 2 (attached statement).

[32] Docket Entry 26, Exh. 1 at ¶¶ 17, 18.

[33] Docket Entry 26, Exh. 2 at 102, Exh. 3 at ¶ 21.

[34] Docket Entry 29, Exh. 6 at 2.

employment and that Boreo and Coffey were disinclined to offer her the South Texas District Manager position for reasons that were "discriminatory and retaliatory."[35]  At the request of defendant's in-house counsel, Mueller commenced an investigation of plaintiff's allegations. Mueller interviewed plaintiff and witnesses identified by plaintiff.  However, he deliberately withheld the existence and nature of plaintiff's allegations from the interviewing panel of Boero, Coffey, and Osborne.[36]  Mueller received additional allegations of discrimination and retaliation from plaintiff on January 15 and 16, 2003.[37]

On January 2, 2003, Coffey drafted a memorandum setting forth the interview selection criteria along with the "weight" to be giving to each category.  Boero and Coffey used the memorandum to develop a scorecard or "grid" to ensure that all the candidates were interviewed fairly and equitably utilizing identical criteria.[38]  Boero and Coffey met in defendant's Houston district office to finalize the interview grid.[39]

On January 14, 2003, an interview panel consisting of Boero, Coffey, and Osborne interviewed Boehmer, Litrell, and Dryer.  On January 15, 2003, the panel interviewed Kristek, Gazdar, and plaintiff.[40]  After initially scoring the candidates according to the established criteria and using the grids, the weighing factors were changed, and the initial scores discarded.[41]  The

---

[35] Docket Entry 26, Exh. 1 at ¶ 19.

[36] **Id.**

[37] Docket Entry 26, Exh. 1 at ¶ 20.

[38] Docket Entry 26, Exh. 4 at ¶ 5.

[39] Docket Entry 26, Exh. 4 at ¶ 6.

[40] Docket Entry 26, Exh. 3 at ¶ 21.

[41] Docket Entry 26, Exh.3 at ¶ 23, Exh. 4 at ¶ 8; Docket Entry 30, Exh. 1 at 1.

panel created new grid scores using the altered criteria.[42]  According to defendant, the candidate

rankings using the initial scores were: Kristek 81.3, Dryer 76.6, plaintiff 71.3, Boehmer 64,

Gazdar 55.3, and Litrell 48.3.[43]  Using the second set of scores, the candidates ranked: Dryer

78.6, Kristek 75.6, Boehmer 62.3, plaintiff 61.6, Gazdar 58, and Litrell 46.[44]

In his affidavit, Boero asserted that the panel changed the weighing factors because the

allocations did not accurately reflect the business skills and experience required for the South

Texas District Manager position.  He was particularly concerned that the weight given to the

internal candidate criteria could eliminate external candidates.[45]  According to plaintiff, the panel

offered the district manager position to Dryer, the only external candidate, at dinner on January

14, 2003, before conducting the last three interviews and changing the weighing factors.[46]

Defendant offered the South Texas District Manager position to Dryer, who declined the

position.  On February 2, 2003, Boero offered the position to Kristek, who accepted the

position.[47]

Boero and Coffey subsequently met with plaintiff and informed her of the interview

results.  According to Boero, he offered plaintiff her former position as financial advisor in

---

[42] Docket Entry 26, Exh. 3 at ¶ 24.

[43] Docket Entry 26, Exh. 3 at ¶ 22.

[44] Docket Entry 26, Exh. 3 at ¶ 26.  The revised grid provided in Boero's affidavit incorrectly identifies Gazdar as Garza.  Plaintiff claims that the original grids were destroyed, so there is no evidence to support defendant's "Average Actual Scores (Initial Grid)."  Furthermore, plaintiff asserts that the average score calculations based on the available grids are erroneous.  Docket Entry 29 at 7, 10-11.

[45] Docket Entry 26, Exh. 3 at ¶ 23.

[46] Docket Entry 29, Exh. 4 at 4, 7 (attached statement).

[47] Docket Entry 26, Exh. 3 at ¶ 31.

9

College Station, Texas, but plaintiff declined the offer and informed him that she would not work for him or work for Coffey.[48]  In her deposition, plaintiff disputed that she was offered a specific territory, and claimed that the College Station territory was not available at that time.  She claimed that "they" tentatively offered her College Station, but there was no territory to offer her; so it was a token offer.  Plaintiff testified that she was willing to work as a financial advisor for defendant.  However, she admitted that she did not want to work for Boero.[49]

In a letter dated February 3, 2003, Mueller informed plaintiff that he had thoroughly investigated her allegations of discrimination and retaliation concerning the consolidation of the Texas districts, including her subsequent correspondence and telephone conversations.  Mueller addressed each of her allegations and concluded that his investigation did not reveal any evidence to support her claims.  He assured her that her concerns were seriously reviewed and invited her to promptly provide him with any additional information to support her claims.[50]

On February 4, 2003, Mueller formally notified plaintiff that she had not been selected for the South Texas District Manager position.  He also informed her that because she had not accepted an alternate position with defendant, her employment would cease due to job elimination as of March 7, 2003.[51]  Plaintiff accepted the severance package and ceased employment with defendant.[52]

---

[48] Docket Entry 26, Exh. 3 at ¶ 33.

[49] Docket Entry 29, Exh 3 at 237-240.

[50] Docket Entry 26, Exh. 1 C.

[51] Docket Entry 26, Exh. 1 at ¶ 25.

[52] Docket Entry 29, Exh. 3 at 240.

Plaintiff commenced the instant case on December 7, 2004, alleging sex discrimination and retaliation in violation of Title VII and age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").[53]  On April 4, 2005, plaintiff amended her complaint by removing the ADEA claim.[54]

Plaintiff fully exhausted her administrative remedies prior to commencing this case. Plaintiff filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC") on November 17, 2003, alleging sex discrimination and retaliation.  On September 8, 2004, the EEOC issued plaintiff notice of her right to sue.  Plaintiff received the notice of her right to sue on September 10, 2004.[55]

## V. Analysis

### A. Summary judgment standard.

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Rule 56 provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[56]

Rule 56 requires that there be no genuine issue of material fact.  A fact is material if it

---

[53] Docket Entry 1.

[54] Docket Entry 4.

[55] Docket Entry 4 at ¶¶ 3, 4.  Plaintiff did not attach a copy of her Right to Sue letter to her amended complaint.

[56] Fed. R. Civ. P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

might affect the outcome of the lawsuit under the governing law.[57]  A dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[58]  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[59]

The movant on a summary judgment motion bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[60]  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[61]  Regardless of whether the movant accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[62]  Once the movant has carried that burden, the burden then shifts to the party opposing

---

[57] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986); **Thomas v. LTV Corp.**, 39 F.3d 611, 616 (5th Cir. 1994).

[58] **Anderson**, 477 U.S. at 248; **Wise v. E.I. DuPont De Nemours & Co.**, 58 F.3d 193, 195 (5th Cir. 1995).

[59] **Anderson**, 477 U.S. at 249.

[60] **Celotex Corp.**, 477 U.S. at 323.

[61] **Edwards v. Aguillard**, 482 U.S. 578, 595 n.16 (1987) (citing **Celotex Corp.**, 477 U.S. at 323).

[62] **Celotex Corp.**, 477 U.S. at 323.

the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[63]

Importantly, the nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings.[64]  Rather, the nonmovant must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[65]  When determining whether a genuine issue of material fact exists, the court "will not weigh the evidence or evaluate the credibility of witnesses."[66]  The court will look at the record in the light most favorable to the nonmovant drawing all inferences most favorable to that party.[67]  Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."[68]  Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial.[69]  Accordingly, summary judgment motions

---

[63] **Anderson**, 477 U.S. at 257.

[64] Fed. R. Civ. P. 56(e); **Anderson**, 477 U.S. at 250; **State of Texas v. Thompson**, 70 F.3d 390, 393 (5th Cir. 1995).

[65] **Celotex Corp.**, 477 U.S. at 324; **Fields v. City of South Houston, Texas**, 922 F.2d 1183, 1187 (5th Cir. 1991); **Neff v. American Dairy Queen Corp.**, 58 F.3d 1063, 1065 (5th Cir. 1995).

[66] **Caboni v. General Motors Corp.**, 278 F.3d 448, 451 (5th Cir. 2002).

[67] **Hibernia Nat'l Bank v. Carner**, 997 F.2d 94, 97 (5th Cir. 1993).  **See also Little v. Liquid Air Corp.**, 37 F.3d 1069, 1075 (5th Cir. 1994) (holding that a nonmovant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

[68] **See Douglass v. United Services Auto. Ass'n**, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing **Forsyth v. Barr**, 19 F.3d 1527, 1533 (5th Cir. 1994)).

[69] **Celotex Corp.**, 477 U.S. at 322-23 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

permit the court to resolve lawsuits without the necessity of trials if there is no genuine dispute as

to any material facts and the moving party is entitled to judgment as a matter of law.[70]

**B. Unlawful employment practices under Title VII.**

> Title VII makes it unlawful for an employer to

>> fail or refuse to hire or to discharge any individual, or otherwise to
>> discriminate against any individual with respect to his
>> compensation, terms, conditions, or privileges of employment,
>> because of such individual's race, color, religion, sex, or national
>> origin...[71]

> It is also an unlawful employment practice under Title VII

>> for an employer to discriminate against any of his employees ...
>> because he has opposed any practice made an unlawful
>> employment practice by this subchapter, or because he has made a
>> charge, testified, assisted, or participated in any manner in an
>> investigation, proceeding, or hearing under this subchapter.[72]

Actions for employment discrimination are subject to a burden shifting analytical

framework.  First, the employee alleging the discrimination bears the burden of proving a *prima*

*facie* case of discrimination based on an adverse employment action.  If he or she does so, the

burden then shifts to the employer to establish a legitimate reason for the adverse employment

action.  When the employer proves a lawful, nondiscriminatory reason for the adverse

employment action, the burden then shifts back to the plaintiff-employee to show that the alleged

nondiscriminatory reason was mere pretext for discriminatory conduct[73] or that the defendant's

---

[70] **See** **Fields**, 922 F.2d at 1187.

[71] 42 U.S.C. § 2000e-2(a)(1).

[72] 42 U.S.C. § 2000e-3(a).

[73] **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973); **Reeves v. Sanderson Plumbing Products,**
**Inc.**, 530 U.S. 133 (2000).

nondiscriminatory reason was only one of the reasons for its conduct while plaintiff's status as a member of a protected class is another motivating factor for the conduct (mixed motive alternatives).[74]

## C. Has plaintiff demonstrated genuine issues of material fact for trial that defendant discriminated against plaintiff because of her gender in violation of Title VII?

Plaintiff claims that defendant discriminated against her by failing to retain her in the district manager position or hire her for the new South Texas District Manager position.  Plaintiff concedes that Dryer was the best qualified of the candidates for the South Texas District Manager position.  However, she argues that she was clearly more qualified than Kristek, the male that defendant ultimately hired for the position after Dryer declined the offer.  Based on the circumstances surrounding the consolidation, defendant's requirement that she reapply for the position that she already held, defendant's selection of a less experienced male in the new South Texas District Manager position, and a prevailing company atmosphere of gender discrimination, plaintiff alleges that defendant violated Title VII.

As explained above, in order to survive a motion for summary judgment, plaintiff must initially establish a *prima facie* case of discrimination.  A *prima facie* case of sex or gender discrimination in violation of Title VII requires plaintiff to establish that (1) she was a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she was "replaced by someone outside of the protected class, or in the case of

---

[74] **See also Torrez v. Milk Products, L.P.**, 402 F.Supp.2d 773, 776-77 (W.D. Tex. 2005) (explaining the **McDonnell Douglas** framework and adding the mixed motive element).

disparate treatment, show that others similarly situated were treated more favorably."[75]  The

"adverse action" taken by the employer must be an ultimate employment decision, such as one

involving hiring, discharging, granting leave, promoting, or compensating.[76]

     In this case, defendant concedes for purposes of this summary judgment motion that

plaintiff can establish her *prima facie* case.[77]  Accordingly, the burden shifts to defendant to

provide a legitimate, nondiscriminatory reason for the adverse employment action.  Defendant's

burden is "one of production, not persuasion; it 'can involve no credibility assessment.'"[78]

     According to Boero, the transfer of Central Texas District Manager Bradley Hope

("Hope") to Nashville, Tennessee, made the time ripe to consolidate the Central Texas District

with the San Antonio District.  Boero testified the consolidation would provide economies of

scale, improve marketing synergies, and improve potential income to the remaining district

managers.  The consolidation would also result in the new district including over a  million more

people than the existing San Antonio District.  Importantly, the new district would include the

University of Texas and the Texas capital.

     In his letter to the Human Resources Director, Boero communicated reservations to

Mueller about plaintiff's ability to manage the consolidated South Texas District and expressed

---

[75] **Todd v. Waste Mgmt. of Texas, Inc.**, No. SA-03-CA-314XR, 2004 WL 1465771, at *3 (W.D.Tex. June 30, 2004) (citing **Okoye v. The University of Texas Houston Health Sci. Ctr.**, 245 F.3d 507, 512-13 (5th Cir. 2001)).

[76] **Hernandez v. Crawford Bldg. Material Co.**, 321 F.3d 528, 531-32 (5th Cir. 2003) (citing **Dollis v. Rubin**, 77 F.3d 777, 781-82 (5th Cir.1995)).

[77] Docket Entry 25 at 7 n. 1.

[78] **Reeves v. Sanderson Plumbing Products, Inc.**, 530 U.S. 133, 142 (2000) (quoting **St. Mary's Honor Center v. Hicks**, 509 U.S. 502, 509 (1993)).

16

his opinion that the company should seek additional candidates for the position.  Defendant

conducted interviews for the South Texas District Manager position and allowed plaintiff to

participate in the interview process.  A panel consisting of Boero, Coffey, and Osborne ranked

the six candidates based on objective and subjective criteria and offered the position to the

highest ranking candidate, Dryer.  Dryer declined the position, and the panel offered the position

to Kristek, the candidate with the second highest score.

Accordingly, defendant has rebutted plaintiff's *prima facie* case by providing sufficient

admissible evidence for a trier of fact to conclude that defendant eliminated plaintiff's district

manager position for legitimate business reasons, and defendant did not offer the position of

South Texas District Manager to plaintiff because another candidate, more qualified based on the

grid scores, was offered and accepted the position.

With this finding, the burden shifts to plaintiff to present evidence showing that

defendant's offered reasons are not the true reasons for plaintiff's removal from her district

manager position and her non-selection for the new South Texas District Manager position.

Plaintiff may meet her burden by showing that defendant's explanation is not worthy of

credence.[79]  Plaintiff has offered sufficient evidence to meet her burden.

Defendant explained that the interviewing panel scored the candidates using a list of

qualifications they considered necessary to perform the South Texas District Manager position.

Defendant claims that after conducting the interviews, Boero and the other panel members

determined that the allocation of objective criteria points did not accurately reflect the business

skills and experience required for the position.  The panel was particularly concerned that the

---

[79] **Reeves**, 530 U.S. at 143.

initial assessment tool could eliminate more qualified external candidates, and therefore, the panel revised the grid and applied the new criteria to the candidates.[80]

Significantly, only one external candidate, Dryer, interviewed for the position of South Texas District Manager.  On January 14, 2003, the panel interviewed Boehmer, Litrell, and Dryer.  According to plaintiff's EEOC affidavit, the panel interviewed Litrell and Boehmer at the district office in Houston, but deviated from the standard interview procedure by interviewing Dryer at a dinner meeting where they verbally offered Dryer the South Texas District Manager position.[81]  The following day, the panel interviewed Kristek, Gazdar, and plaintiff.

On the initial grid, Dryer ranked second behind Kristek.  After revising the grid criteria, Dryer moved to the top of the rankings, and Kristek fell to second.  Taking the evidence in the light most favorable to plaintiff, it appears that defendant reached its decision concerning the South Texas District Manager position before completing the interview process and interviewing plaintiff and the other female candidate.  Therefore, defendant could not have relied on the grid scoring to determine the most qualified candidate to the extent it has alleged.  A question of fact arises as to whether defendant  manipulated the grids to justify offering the district manager position first to Dryer, then to Kristek, and eliminate plaintiff from the position completely.

To further support plaintiff's assertion that defendant's stated reasons are pretext for discrimination, plaintiff has offered evidence to show that she was better qualified for the position than Kristek.  Plaintiff had been a district manager with defendant for four years

---

[80] Docket Entry 26, Exh. 3 at ¶ 23.

[81] Docket Entry 29, Exh. 4 at 4 (attached statement).  Defendant has not objected to the admissibility of plaintiff's EEOC affidavit with its attached statement.

compared to Kristek's one.[82]   Her district had total sales of $13,993,432.00 as of November 8,

2002, and exceeded the 2002 goal of $12,801,912.00.   During the same period, Kristek had total

sales of $4,184,491.00, which fell short of his 2002 goal of $10,277,000.   Plaintiff had 37.62

ranking points out of a possible 75, while Kristek had 30.78 ranking points.   The December 2002

figures show plaintiff's district had achieved 138.5% of its sales goal with sales of

$15,636,702.00.   However, the goal for Kristek's district was scaled down to $4,078,300.00, so

the sales of $4,080,029.00 represented an 100% goal achievement.   Inexplicably, plaintiff's

rating in December 2002 fell to 35.02 despite exceeding the district goals, while Kristek's rating

climbed to 37.62 points after meeting a lowered goal.[83]

Boero stated that he was concerned that plaintiff could not effectively handle the new

South Texas District because her advisor count would double, the new district would contain a

far greater population, and the new district would contain the University of Texas at Austin.[84]

However, based on the evidence, plaintiff managed more advisors who generated far more in

sales than Kristek. Plaintiff managed a district with three times the sales of Kristek, and

plaintiff's district achieved its sales goals.   Plaintiff also had experience dealing with Texas A &

M University at College Station.

Standing alone, this evidence of plaintiff's qualifications might not meet the high bar

required by the Fifth Circuit to show that plaintiff was "clearly better qualified" than Kristek for

---

[82] Docket Entry 29, Exh. 6 at 2.

[83] Docket Entry 29, Exh. 5.

[84] Docket Entry 26, Exh. 3 at ¶ 13.

the South Texas District Manager position.[85]   However, considered together with the panel's modification of the grid criteria, the evidence of plaintiff's qualifications relative to those of Kristek undermines defendant's stated reasons for eliminating plaintiff's position and hiring Kristek to fill the South Texas District manager position.

Finally, in her EEOC affidavit, plaintiff stated that she had knowledge of several women managers who were terminated and that the defendant's own Human Resources department acknowledged that defendant was a 90% white male organization.  In 2000, defendant had only 11 female managers out of a total 112 managers, and by 2002, the number had declined to 9 females managers out of 92 managers.[86]  Furthermore, plaintiff stated that she had contacted Osborne on December 6, 2002, and Osborne indicated that Boero and Coffey wanted a man in the position to deal with the contact person at the University of Texas.[87]

Based on the entire summary judgment record, plaintiff has established a genuine material issue of fact for trial as to whether defendant discriminated against plaintiff because of gender when it eliminated her district manager position and selected a male with less district manager experience for the position of South Texas District Manager.  Accordingly, defendant's motion for summary judgment is **DENIED.**

## D. Has plaintiff demonstrated genuine issues of material fact for trial that defendant

---

[85] **See**, **Celestine v. Petroleos de Venezuella SA** , 266 F.3d 343, 357 (5th Cir. 2001) (quoting **Deines v. Texas Dept. of Prot. & Regulatory Servs.**, 164 F.3d 277, 280-81 (5th Cir. 1999) for the rule that differences in qualifications are not probative of discrimination unless the disparities are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.").

[86] Docket Entry 29, Exh. 4 at 8 (attached statement).

[87] Docket Entry 29, Exh. 4 at 3.

**retaliated against plaintiff in violation of Title VII because she engaged in protected activity?**

Plaintiff alleges that defendant retaliated against her for engaging in activity protected by Title VII.  Specifically, plaintiff asserts that defendant retaliated against her for filing the sex discrimination complaint against Jordan in October 2001 by eliminating her position as district manager, and selecting a male with less district manager experience for the position of South Texas District Manager.[88]

To establish a *prima facie* case of retaliation in violation of Title VII, a plaintiff must show that: (1) he or she engaged in an activity that Title VII protects; (2) the employer carried out an adverse employment action; and (3) a causal nexus exists between his or her protected activity and defendant's adverse action.[89]  In the context of an employment retaliation case, "[a]n 'adverse employment action' is now one that a reasonable employee would find to be materially adverse, i.e., one that might dissuade a reasonable worker from making or supporting a charge of discrimination under Title VII of the Civil Rights Act of 1964."[90]  The 'causal link' required to establish a *prima facie* case of retaliation is not as stringent as the 'but for' standard; therefore, a plaintiff does not need to show that engaging in the protected activity was the only factor

---

[88] In its motion for summary judgment, defendant addresses Coffey, Osborne, and Boero's lack of knowledge of plaintiff's 2002/2003 complaints.  However, plaintiff's complaint only identifies her October/November 2001 complaint against Jordan as motivating the retaliation.  Docket Entry 4 at ¶ 9.

[89] **Harvill v. Westward Commc'ns, L.L.C.**, 433 F.3d 428, 439 (5th Cir. 2005).

[90] **Sabzevari v. Reliable Life Ins. Co.**, No. H-03-3240, 2006 WL 2336909, *2 (S.D. Tex. Aug. 10, 2006) (recognizing the new standard set forth by the Supreme Court in **Burlington Northern & Santa Fe Railway Co. v. White**, 548 U.S. —, 126 S.Ct. 2405, 2415 (2006), supplanted the "ultimate employment decision" previously used by the 5th Circuit in retaliation cases).

motivating the employer to take the adverse employment action.[91]

There is no dispute that plaintiff has established the first two elements of her *prima facie* case of retaliation.  Plaintiff engaged in an activity which is protected by Title VII when she filed an internal complaint against Jordan alleging sex discrimination.[92]  She suffered an adverse employment action when defendant eliminated her district manager position and did not select her for the South Texas District Manager position resulting in the termination of her employment.

However, as a threshold matter, plaintiff must show that the superiors responsible for the adverse employment action knew that she had engaged in protected activity.  "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."[93]

Of plaintiff's supervisors, it is clear that Jordan and Osborne had knowledge of plaintiff's complaint against Jordan.  Mueller interviewed Jordan concerning plaintiff's complaint.  Osborne admitted that the Human Resources department made him aware of plaintiff's complaint against Jordan in October 2001.[94]  Likewise, Coffey admitted that plaintiff volunteered to him that she did not like or trust Jordan, and she felt that she did not receive a fair shake from Jordan because she was a woman.  Coffey did not expressly deny having knowledge that plaintiff had

---

[91] **Evans v. City of Houston**,  246 F.3d 344, 354 (5th Cir. 2001) (citing **Long v. Eastfield College**, 88 F.3d 300, 305 n.4 (5th Cir.1996)).

[92] Docket Entry 4 at ¶ 9.

[93] **Chaney v. New Orleans Pub. Facility Mgmt. Inc.**, 179 F.3d 164, 168 (5th Cir. 1999).

[94] Docket Entry 26, Exh. 5 at ¶ 2.

filed a complaint against Jordan.[95]

Only Boero expressly denied having knowledge of plaintiff filing the complaint against Jordan.[96]  Boero acknowledged that he spoke with Jordan soon after he was assigned as Regional Vice President over the former Gulf Coast Region, and Jordan told Boero that he had a personal issue with plaintiff.  Boero stated that he never followed up with the Human Resources department about the personal issue.[97]

Notwithstanding the fact that three of plaintiff's supervisors were aware of her protected activity, plaintiff has failed to establish a causal connection between her protected activity and the adverse employment action that she suffered.  Jordan was no longer her supervisor at the time the adverse employment action occurred, and plaintiff does not offer any evidence that he had any input into the decision making process concerning the South Texas District Manager position.  Plaintiff stated that Osborne was a good mentor to her, and she did not claim that he discriminated against her except to the extent that he was involved in changing the grid criteria. Plaintiff does not offer any proof that Osborne acted in retaliation, and in fact, she turned to Osborne for information and advice in seeking the South Texas District Manager position.[98] Furthermore, plaintiff does not offer any proof that Coffey acted in retaliation for her complaining against Jordan.  Plaintiff conceded that she felt as if she started off with a "fresh

---

[95] Docket Entry 26, Exh. 4 at ¶ 15.

[96] Docket Entry 26, Exh. 3 at ¶ 36.

[97] Docket Entry 29, Exh. 7.

[98] Docket Entry 29, Exh 4 at 3 (attached statement).

slate" with Coffey, and Coffey treated her in that manner.[99]

Plaintiff relies solely on the timing of the adverse action relative to her exercise of the protected activity to show a causal connection.  Plaintiff submitted the internal complaint against Jordan in October 2001.  By December 2001, Jordan was no longer plaintiff's supervisor.  Over a year after plaintiff filed the complaint, Boero contacted Mueller in November 2002 about consolidating the districts and eliminating plaintiff's position.

While consideration of the timing of the protected activity in relation to the adverse employment action is a part of the retaliation analysis, timing is not conclusive of the determination.[100]  Plaintiff has offered no other evidence to show a casual connection between engaging in the protected activity and the adverse employment action.  Consequently, plaintiff has failed to establish *prima facie* case of retaliation under Title VII.

Accordingly, defendant's motion for summary judgment on plaintiff's Title VII retaliation claim will be **GRANTED**.

## VI. Conclusion

Based on the foregoing, I hereby **GRANT** Defendant AIG VALIC's motion for summary judgment on Plaintiff Diane Moore's Title VII retaliation claim.  As discussed above, there are no genuine issues of material fact with respect to plaintiff's failure to establish the causal connection element of her *prima facie* case of retaliation.  AIG VALIC is entitled to judgment as

---

[99] Docket Entry 26, Exh. 2 at 193.

[100] **Gee v. Principi** , 289 F.3d 342, 347 n.3  (5th Cir. 2002; **see also Shackelford v. Deloitte & Touche, LLP**, 190 F.3d 398, 409 (5th Cir.1999) ("Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.").

a matter of law on that claim.  However, genuine issues of material fact remain as to Diane

Moore's Title VII gender discrimination claim.  Therefore, the summary judgment motion is

**<u>DENIED</u>** as to this claim.

       **SIGNED** on September 18, 2006.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

25